UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEVIN M.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-125 TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income benefits. The date of onset was found to be August 1, 2014. AR 21.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. As discussed below, the undersigned agrees that the ALJ erred and the ALJ's decision is reversed and remanded for further administrative proceedings.

### I.    ISSUES FOR REVEW

1. Did the ALJ err in assessing plaintiff's impairments by omitting plaintiff's headaches and vertigo?

2. Did the ALJ err in evaluating Plaintiff's subjective allegations?

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### A. Headaches and Vertigo

The ALJ did not find plaintiff's vertigo and headaches to be a medically determinable impairment at step two of the sequential evaluation. AR 21. Plaintiff contends that this omission is error. Dkt. 10, at 3. Alternatively, plaintiff argues that the ALJ erred by failing to include the limitations attributable to these impairments in the RFC finding. *Id.*

At step two, the "medical severity" of a claimant's impairments is considered. 20 C.F.R. 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A plaintiff has the burden to show (1) he has a medically determinable impairment or combination of impairments; (2) the impairment or combination of impairments is severe; and (3) the impairment lasted at least 12 months. *See Bowen v. Yuckert*, 482 U.S. 137, 146, (1987); 20 C.F.R. § 404.1520(c), 416.920(c).

The ALJ stated that plaintiff's vertigo had no clear etiology, that it improved following physical therapy, and that plaintiff was no longer having vertigo by May 2016. AR 22-25. The ALJ claimed that plaintiff's headaches were controlled with vitamins and

1 a prednisone taper. AR 23. Finally, the ALJ pointed to a normal cervical spine and brain MRIs to conclude there was a lack of objective findings to explain plaintiff's headaches or vertigo. AR 25. The Court infers that the ALJ concluded these conditions to have insufficient medical evidence to prove any significant work-related limitations.

The Court agrees the ALJ should have found vertigo and migraines to be severe impairments at step two, based on substantial evidence. Ample evidence shows the vertigo "medically determinable" because Dr. Callendar initially diagnosed plaintiff with vertigo as a related condition to plaintiff's acute bacterial sinisitus in March 2015 (AR 533), plaintiff's vertigo did not resolve after his bacterial sinusitis was successfully treated (AR 543), plaintiff was observed to experience vertigo sensations when tested by Dr. Callendar, Dr. Shergill, Dr. Kurth, and Dr. King (AR 455, 543, 574, 581), and plaintiff received prescription medication and underwent physical therapy for his condition (AR 433, 517, 543, 586, 590, 618, 620, 642, 648).

Likewise, plaintiff's headaches are a medically determinable impairment, because he has received multiple diagnoses for his chronic headaches and migraines (AR 518, 572, 599, 619), and his headaches have resisted treatment by various prescription medications and Botox injection (AR 620, 641, 642, 649).

The record indicates that, despite unknown etiology, plaintiff regularly received treatment and pursued follow-up for both these conditions over the course of the relevant period. Furthermore, plaintiff's longstanding diagnosis of fibromyalgia offered a possible objective cause for these conditions throughout the relevant period. See SSR 12-2p. Plaintiff's vertigo improved, but was not ultimately resolved following physical therapy, as on exit Dr. Kurth assessed plaintiff's remaining dizziness and headaches as

1  limiting him to 50% functionality, based on plaintiff's lingering risk of falling from his

2  dizziness handicap and severe motion sensitivity. AR 596, 602. Plaintiff's treatment

3  notes indicate that his vertigo returned within six weeks after physical therapy, upon

4  which he was started on new medication. AR 618. The vitamins and prednisone taper to

5  which the ALJ refers were accompanied by the introduction of Depakote, followed by

6  Cataflam, as plaintiff's headaches still occurred 4 to 5 times per week. AR 648.

Substantial evidence therefore cannot support the ALJ's conclusion that plaintiff's alleged impairments were well-controlled by minimal medication or that objective findings did not support their existence. The record shows vertigo and headaches are medically determinable conditions, lasted at least 12 months, and more than minimally affects plaintiff's ability to perform work activities. Accordingly, the ALJ erred by not finding vertigo or headaches to be severe medical impairments.

If the ALJ considers an impairment's effect on a claimant's ability to do work activities *and* includes those limitations in the RFC, the omission of the impairment from the step two evaluation constitutes only harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The ALJ discussed plaintiff's vertigo and headaches as part of his discussion of plaintiff's limitations. AR 23. As such, had the ALJ included any limitations associated with plaintiff's vertigo and headaches, the error of omission at step two would likely be harmless.

Yet the ALJ failed to include any limitations based on vertigo and headaches. The ALJ must consider *all* limitations and restrictions when formulating the RFC, even those stemming from impairments that are not "severe." *See Buck v. Berryhill*, 869 F.3d

at 1049; 20 C.F.R. § 404.1520(e). On this record, the ALJ's determination that plaintiff's migraines and vertigo were well-controlled or resolved with medication is not supported by substantial evidence. The medical evidence from the relevant period suggests, at the very least, that Plaintiff experienced impacts on standing, sitting, walking, and balancing due to his headaches and vertigo. The ALJ erred by failing to consider the limitations imposed by plaintiff's vertigo and migraines in formulating plaintiff's RFC. Accordingly, the Court concludes that the ALJ's failure to include vertigo and headaches among plaintiff's severe impairments and failure to include the limitations associated with these conditions was harmful error.

B. The ALJ's consideration of plaintiff's testimony

Plaintiff asserts the ALJ erred by discounting plaintiff's testimony regarding the functional limitations of his impairments.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needs to make findings sufficiently specific to allow this Court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ found that the objective medical evidence could reasonably be expected to produce some of plaintiff's symptoms, but discounted plaintiff's testimony regarding the extent of the symptoms arising from his impairments for the following reasons: (1) plaintiff's impairments improved with exercise and conservative treatment; (2) plaintiff's complaints were undermined by a lack of significant treatment and an extended period of time in which plaintiff avoided medication; and (3) plaintiff's claims of debilitating symptoms were not supported by the objective medical evidence in the record. AR 23-25. These reasons do not meet the clear and convincing standard.

First, the ALJ's determination that plaintiff's conditions were controlled by conservative treatment is not supported by substantial evidence. As discussed above, plaintiff's physicians, including Dr. King, a specialist in neurology, concurrently prescribed multiple medications for his conditions of fibromyalgia, vertigo, and headaches. *See, e.g.*, AR 543, 590, 618, 642; *compare Davis v. Colvin*, 2015 U.S. Dist. LEXIS 120329, 2015 WL 5255353, at *11 (E.D. Cal. Sept. 9, 2015) (affirming ALJ's

conservative treatment finding where plaintiff had *not* been referred to a pain specialist). These medications, which were frequently swapped for new medications when shown to be ineffective or to cause unacceptable side effects, did not control plaintiff's symptoms. AR 620, 648. In any case, the ALJ did not explain what additional "non-conservative" treatment plaintiff might be expected to receive.

Second, the record does not support the ALJ's claim that plaintiff went a "extended period of time" without treatment or medication. The ALJ's decision appears to refer to six months during which plaintiff was between medications for another of his impairments (fibromyalgia), but also actively pursuing physical therapy and taking medication for his vertigo and headaches. AR 25, 592, 599, 622. Yet the record does not include any periods during which plaintiff was not pursuing treatment of some kind for his chronic conditions.

Finally, the ALJ lacked support for his conclusion that objective findings did not support the degree of functional limitations plaintiff alleged. While the ALJ cited imaging results and neurological findings—such as normal gait, range of motion, and straight leg raising tests—these findings do not undermine plaintiff's claims of pain, dizziness, and resulting limitations, which the record suggests are due to fibromyalgia and migraines -- conditions that would not result in abnormal imaging or neurological findings. AR 24; *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment"); *see also Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) (noting that those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes, and their joints appear normal). ). Additionally, since the Court

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 7

has rejected the ALJ's other reasons to discount plaintiff's testimony, the ALJ may not reject plaintiff's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ erred in discounting plaintiff's testimony and should fully consider it on remand.

### C. Remand With Instructions for Further Proceedings

The Court may remand a case "either for additional evidence and findings or to award benefits." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). The Court has determined that on remand the ALJ must re-evaluate plaintiff's impairments at step two (headaches and vertigo), plaintiff's testimony, and the RFC. Therefore, there are outstanding issues which must be resolved and remand for further proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to re-evaluate plaintiff's impairments at step two (headaches and vertigo), plaintiff's testimony, and the RFC.

Dated this 31st day of January, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge